UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

MONTY GREEN

Plaintiff,

SUMMONS ISSUED

CV 13 - 2611 JOHNSON

COMPLAINT
AND JURY DEMAND  GO, MJ.

-against-

THE CITY OF NEW YORK; RAYMOND W. KELLY, as
Police Commissioner; CHARLES V. CAMPISI, as Bureau
Chief, Internal Affairs Bureau; MICHAEL C. RICCIARDI,
as Deputy Inspector, Internal Affairs Bureau Group No.: 34;
MATTHEW HYLAND, as Deputy Inspector, Internal Affairs
Bureau Group No.: 41; DERRICK S. CORRADO, as Deputy
Inspector, Internal Affairs Bureau Group No.: 41; LARRY
FLUNORY, as Sergeant, Internal Affairs Bureau Group
No.: 41; WILBERT CRAWLEY, as Sergeant, Internal Affairs
Bureau Group No.: 41; RICK MILLER, as Deputy Inspector,
Internal Affairs Bureau, Group No.: 52; SEAN DONOVAN,
as Lieutenant, Internal Affairs Bureau Group No.: 52; and
UC 5024, as Detective, Internal Affairs Bureau Group No.: 52,
each being sued individually in their official capacities as
employees' of Defendant THE CITY OF NEW YORK

Defendants'

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ APR 3 0 2013 ★

BROOKLYN OFFICE

U.S. DISTRICT COURT
EASTERN DISTRICT

2013 APR 30  PM 1:28

FILED
CLERK



-------------------------------------------------------------x

The Plaintiff MONTY GREEN by his attorney The Sanders Firm, P.C., as and for his

complaint against Defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY;

CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S.

CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN

DONOVAN; and UC 5024, respectfully set forth and allege that:

## INTRODUCTION

This is an action for equitable relief and money damages on behalf of the Plaintiff MONTY

GREEN, (hereinafter referred to as "plaintiff") who was being deprived of his statutory rights as an

employee as a result of Defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY;

CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S discriminatory conduct.

## JURISDICTION AND VENUE

1.    The jurisdiction of this Court is invoked pursuant to the First Amendment of the United States Constitution; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; New York State Executive Law § 296, and New York City Administrative Law § 8-107.

2.    The unlawful employment practices, violations of Plaintiff's statutory rights as an employee complained of herein were committed within New York, Kings, Queens, and Ulster counties.

## PROCEDURAL REQUIREMENTS

3.    Plaintiff alleges that on or about February 15, 2012, he filed a Notice of Claim with the New York City Comptroller's Office, Claim No.: 2012PI004271.

4.    Plaintiff alleges that the aforementioned claims were not resolved during the adjustment period.

5.    Plaintiff has filed suit with this court within the applicable statute of limitations period.

## PLAINTIFF

6.    Plaintiff MONTY GREEN is a citizen of the United States of America and is over twenty-one (21) years of age, a resident of Kings County and is a former employee of Defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the Police Department City of New York (hereinafter referred to as the "NYPD"). For the purposes of this

litigation Defendant CITY may be identified interchangeably using CITY or NYPD to identify the employer which is the CITY.

## DEFENDANTS'

7.      Defendant CITY is a municipal corporation formed under New York Law and at all relevant times was Plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the world.

8.      Defendant RAYMOND W. KELLY (Caucasian Male), as Police Commissioner.

9.      Defendant CHARLES V. CAMPISI (Caucasian Male), as Bureau Chief, Internal Affairs Bureau.

10.     Defendant MICHAEL C. RICCIARDI (Caucasian Male), as Deputy Inspector, Internal Affairs Bureau Group No.: 34.

11.     Defendant MATTHEW HYLAND (Caucasian Male), as Deputy Inspector, Internal Affairs Bureau Group No.: 41.

12.     Defendant DERRICK S. CORRADO (Hispanic Male), as Deputy Inspector, Internal Affairs Bureau Group No.: 41.

13.     Defendant LARRY FLUNORY (African-American Male), as Sergeant, Internal Affairs Bureau Group No.: 41.

14.     Defendant WILBERT CRAWLEY (African-American Male), as Sergeant, Internal Affairs Bureau Group No.: 41.

15.     Defendant RICK MILLER (Caucasian Male), as Deputy Inspector, Internal Affairs Bureau Group No.: 52.

16.     Defendant SEAN DONOVAN (Caucasian Male), as Lieutenant, Internal Affairs Bureau Group No.: 52.

17.     Defendant UC 5024 (Hispanic Female), as Detective, Internal Affairs Bureau Group No.: 52

## BACKGROUND

18.     Plaintiff self identifies as a Dominican male.

19.     Plaintiff is a former employee of the NYPD.

20.     Plaintiff alleges that the Internal Affairs Bureau under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI, the 'Bureau' has and continues to operate as an inept corrupt 'Good Ole Boys' network protected and condoned by Mayor Michael R. Bloomberg and the New York City Council without any real governmental oversight.

21.     Plaintiff alleges that the Internal Affairs Bureau under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI intentionally target primarily African-American Male employees' with 'bogus' 'Targeted Integrity Test' investigations when there is no basis for either initiating an investigation against them or continuing with an investigation even after there is 'NO EVIDENCE' of criminal or serious police misconduct.

22.     Plaintiff alleges that the Internal Affairs Bureau under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI intentionally violate the civil rights of primarily African-American Male employees' by changing their duty statuses and suspending them for extended periods of time without any legal basis.

23.     Plaintiff alleges that on or about July 16, 2009, the NYPD Organized Crime Control Bureau's Auto Crime Division was monitoring a wiretap.

24.     Plaintiff alleges that based upon the target saying "It is going to be alright, I got my man on it he is a D.T." the Auto Crime Division notified the Internal Affairs Bureau.

25.     Plaintiff alleges that the Auto Crime Division interpreted 'D.T.' to mean

'Detective' although the target did not specifically use the term 'Detective.'

26.     Plaintiff alleges that he was not specifically mentioned by the target.

27.     Plaintiff alleges that although the use of initials 'D.T.' is ambiguous, the referral to the Internal Affairs Bureau was proper.

28.     Plaintiff alleges that the first internal investigation was designated as a 'C' number meaning 'criminal' and assigned to Group No.: 41. The case was assigned Log No.: 09-34615.

29.     Plaintiff alleges that on or about July 26, 2009, a complaint was filed with the Internal Affairs Bureau alleging that he engaged in misconduct against a female he summonsed in lieu of arrest.

30.     Plaintiff alleges that the second internal investigation was designated as a 'C' number meaning 'criminal' and assigned to Group No.: 34. The case was assigned Log No.: 09-36342.

31.     Plaintiff alleges that the referral to the Internal Affairs Bureau was proper.

32.     Plaintiff alleges that the internal investigators' designated both cases as a 'C' because they 'believed' that it was 'highly likely' that he would be arrested.

33.     Plaintiff alleges that these 'prejudicial views' determined the outcome of both cases, as indicated throughout both investigative files.

34.     Plaintiff alleges that the internal investigators' investigated for a 'desired outcome' as opposed assessing the credible objective facts.

35.     Plaintiff alleges that on or about August 19, 2009, a woman arrested by the Auto Crime Division for criminal possession of a weapon allegedly reported that "the guns were supposed to go to a possible MOS called 'Monte.'"

36.     Plaintiff alleges that the woman allegedly describes the MOS as a "M/B with tattoos on his arm and his picture is hanging up in a tattoo parlor located in Brooklyn"

37.     Plaintiff alleges that he has no tattoos on his arms nor is his picture hanging up in a tattoo parlor located in Brooklyn.

38.     Plaintiff alleges that on or about August 21, 2009, the Auto Crime Division turned over three (3) separate conversations to internal investigators' assigned to Group No. 41 they erroneously 'prejudged' these conversations to be the 'promotion of organized low-level prostitution.'

39.     Plaintiff alleges that the internal investigators' 'prejudged' 'street lingo' to be the 'promotion of organized low-level prostitution' when in reality, the recordings are simply offhanded conversations in which he participated.

40.     Plaintiff alleges that the internal investigators' began to monitor his personal activities.

41.     Plaintiff alleges that notwithstanding his personal opinion, the referral to the Internal Affairs Bureau was proper.

42.     Plaintiff alleges that on or about September 2, 2009, internal investigators' from Group No.: 41 conferred with Queens County District Attorney Bureau Chief James Liander attempting to secure a wiretap of his personal cellular telephone.

43.     Plaintiff alleges that Queens County District Attorney Bureau Chief James Liander advised them that the mere crime of 'Promoting Prostitution' is not a crime listed in the New York State Penal that authorizes obtaining a wiretap, the only ways to obtain a wiretap are if the crime is a 'C' felony or higher or if he is using his personal cellular telephone to conduct criminal activity.

44.    Plaintiff alleges that Queens County District Attorney Bureau Chief James Liander advised them to continue personally monitoring him and consider using a 'CI' confidential informant for controlled phone calls or meetings with him.

45.    Plaintiff alleges that on or about September 8, 2009, internal investigators' from Group No.: 41 attended a proffer session at the Queens County District Attorney's Office Rackets Bureau.

46.    Plaintiff alleges that the proffer session involved the questioning of a target (PIMP) about his alleged association with him.

47.    Plaintiff alleges that during the proffer session, the target told the internal investigators' that "Monty is a good guy and he doesn't know of him to be involved in anything illegal."

48.    Plaintiff alleges that on or about September 30 2009, internal investigators' from Group No.: 41 attended a second proffer session at the Queens County District Attorney's Office.

49.    Plaintiff alleges that this second proffer session involved the questioning of the same target about his alleged association with him.

50.    Plaintiff alleges that during this second proffer session the internal investigators' was informed that this same target may have participated in two (2) separate unsolved homicides thereby ending the second proffer session.

51.    Plaintiff alleges that on or about October 7, 2009, Defendant DERRICK S. CORRADO under the supervision of Defendant MATTHEW HYLAND requested that Group No.: 52 perform a 'Targeted Integrity Test' of him.

52.    Plaintiff alleges that on or about October 23, 2009, Defendant SEAN DONOVAN

under the supervision of Defendant RICK MILLER setup a controlled meeting between him and Defendant UC 5024 aka code name 'Candy.'

53.    Plaintiff alleges that Defendant UC 5024 is one of Defendant CHARLES V. CAMPISI'S 'Charlie's Angels.'

54.    Plaintiff alleges that 'Charlie's Angels' are the team of female officers assigned to work undercover in Group No.: 52.

55.    Plaintiff alleges that during this controlled meeting, Defendant UC 5024 along with UC 5029 (Hispanic Female) drove alongside his stopped vehicle on the corner of Atlantic and Saratoga Avenues requesting directions to Queens.

56.    Plaintiff alleges that after a brief conversation, he led them to the Jackie Robinson Parkway and drove away.

57.    Plaintiff alleges that on or about October 29, 2009, internal investigators' from Group No.: 41 registered a 'CI' to work with them.

58.    Plaintiff alleges that he was placed in a Photo Array, Position No.: 3.

59.    Plaintiff alleges that the 'CI' identified Position Nos.: 1 and 6 as 'PIMPS.'

60.    Plaintiff alleges that the 'CI' did not identify him as a 'PIMP.'

61.    Plaintiff alleges that on or about November 3, 2009, Defendant LARRY FLUNORY under the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO acting as Defendant UC 5024 initiates contact with him via cellular telephone.

62.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

63.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

64.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

65.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

66.    Plaintiff alleges that on or about November 4, 2009, Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiates contact with him via cellular telephone.

67.    Plaintiff alleges that during the conversation 'Candy' initiates and discusses prostitution and related activities.

68.    Plaintiff alleges that he asked 'Candy' "You looking for a Daddy?"

69.    Plaintiff alleges that 'Candy' racially stereotyped his 'street lingo' to mean 'PIMP' but, in reality, he found her attractive and only wanted to have sex with her.

70.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

71.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

72.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

73.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

74.    Plaintiff alleges that on or about November 6, 2009, Defendant DERRICK S. CORRADO under the supervision of Defendant MATTHEW HYLAND requested that Group No.: 52 perform a 'Targeted Integrity Test' of him.

75.     Plaintiff alleges that the 'Targeted Integrity Test' involved meeting with Defendant UC 5024 at a restaurant in Brooklyn to see if he will discuss assisting her with prostitution and related activities.

76.     Plaintiff alleges that Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiated contact with him via personal cellular telephone.

77.     Plaintiff alleges that the meeting with Defendant UC 5024 did not occur.

78.     Plaintiff alleges that on or about November 12, 2009, Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiates contact with him via personal cellular telephone.

79.     Plaintiff alleges that during the conversation 'Candy' initiates and discusses prostitution and related activities.

80.     Plaintiff alleges that he arranges to meet with 'Candy' on Friday and says "I am going to be your everything."

81.     Plaintiff alleges that 'Candy' responded "What does that mean?"

82.     Plaintiff alleges that he responded "I'll tell you when I see you."

83.     Plaintiff alleges that 'Candy' racially stereotyped his intentions as 'soliciting' her but, in reality he found her attractive and only wanted to have sex with her.

84.     Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

85.     Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

86.     Plaintiff alleges that he did not offer to provide protection services for 'Candy' as

a 'PIMP' while she performs sexual favors for others in exchange for monies.

87.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

88.    Plaintiff alleges that on or about November 14, 2009, Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiates contact with him via cellular telephone.

89.    Plaintiff alleges that during the conversation 'Candy' initiates and discusses prostitution and related activities.

90.    Plaintiff alleges that 'Candy' was angry because he did not meet with her on two (2) different occasions.

91.    Plaintiff alleges that up until this point, he has only seen 'Candy' during their initial meeting October 23, 2009.

92.    Plaintiff alleges that he says "I'm everything."

93.    Plaintiff alleges that 'Candy' asked "When you say everything, what else you wanna do?"

94.    Plaintiff alleges that he says "Your advisor, doctor, lawyer – everything."

95.    Plaintiff alleges that 'Candy' racially stereotyped 'street banter' to mean 'PIMP' but, in reality, he found her attractive and only wanted to have sex with her.

96.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

97.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

98.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as

a 'PIMP' while she performs sexual favors for others in exchange for monies.

99.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

100.    Plaintiff alleges that on or about November 18, 2009, internal investigators' under the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO were told by Queens County Assistant District Attorney Christopher Barnett that it was his belief that the firearms recovered in the arrest of the target on August 19, 2009, were destined for a Jamaican named 'Mautee' and does not believe that plaintiff was involved in the delivery or receipt of those firearms.

101.    Plaintiff alleges that internal investigators' under the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO never even followed up on this lead, instead maintained their focus on him.

102.    Plaintiff alleges that on or about December 1, 2009, Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiates contact with him via cellular telephone.

103.    Plaintiff alleges that during the conversation 'Candy' initiates and discusses prostitution and related activities.

104.    Plaintiff alleges that 'Candy' racially stereotyped 'street banter' to mean 'PIMPING' but, in reality, he found her attractive and only wanted to have sex with her.

105.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

106.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

107.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

108.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

109.    Plaintiff alleges that on or about December 2, 2009, Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiates contact with him via cellular telephone.

110.    Plaintiff alleges that during the conversation 'Candy' initiates and discusses prostitution and related activities.

111.    Plaintiff alleges that 'Candy' racially stereotyped 'street banter' to mean 'PIMPING' but, in reality, he found her attractive and only wanted to have sex with her.

112.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

113.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

114.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

115.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

116.    Plaintiff alleges that on or about December 10, 2009, internal investigators' under the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO added additional allegations of corruption in bad faith against him accusing him of 'Rate Jumping.'

117.    Plaintiff alleges that on or about December 11, 2009, internal investigators' under

the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO in bad faith requested a financial records check on him.

118.    Plaintiff alleges that on or about December 16, 2009, Defendant UC 5024 under the supervision of Defendants' RICK MILLER and SEAN DONOVAN initiates contact with him via cellular telephone.

119.    Plaintiff alleges that 'Candy' attempted to get him to provide two (2) 'girls' sex workers to perform for her friend 'Thomas's' going away party.

120.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

121.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

122.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

123.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

124.    Plaintiff alleges that on or about December 18, 2009, Defendant DERRICK S. CORRADO under the supervision of Defendant MATTHEW HYLAND requested that Group No.: 52 perform a 'Targeted Integrity Test' of him.

125.    Plaintiff alleges that the 'Targeted Integrity Test' involved reserving three (3) hotel rooms in Brooklyn for 'Thomas's' going away party, to see if he would provide sex workers.

126.    Plaintiff alleges that on or about December 22, 2009, Defendant WILBERT CRAWLEY acting as 'Thomas' under the supervision of Defendants' MATTHEW HYLAND

and DERRICK S. CORRADO initiated contact with him via personal cellular telephone.

127.    Plaintiff alleges that during the conversation 'Thomas' initiates and discusses prostitution and related activities.

128.    Plaintiff alleges that 'Thomas' racially stereotyped 'street banter' to mean 'PIMPING' but, in reality, he was only interested in meeting with and having sex with 'Candy.'

129.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

130.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform sexual favors for others in exchange for monies.

131.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

132.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

133.    Plaintiff alleges that on or about December 23, 2009, Defendant WILBERT CRAWLEY under the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO acting as 'Thomas' initiated contact with him via personal cellular telephone.

134.    Plaintiff alleges that during the conversation 'Thomas' initiates and discusses prostitution and related activities.

135.    Plaintiff alleges that 'Thomas' racially stereotyped 'street banter' to mean 'PIMPING' but, in reality, he was only interested in meeting with and having sex with 'Candy.'

136.    Plaintiff alleges that during this brief conversation, he did not solicit 'Candy' for sexual favors in exchange for monies.

137.    Plaintiff alleges that he did not offer to hire 'Candy' as a sex worker to perform

sexual favors for others in exchange for monies.

138.    Plaintiff alleges that he did not offer to provide protection services for 'Candy' as a 'PIMP' while she performs sexual favors for others in exchange for monies.

139.    Plaintiff alleges that he did not demand any portion of proceeds 'Candy' may have received as a sex worker performing sexual favors for others in exchange for monies.

140.    Plaintiff alleges that on or about December 28, 2009, Defendant WILBERT CRAWLEY under the supervision of Defendants' MATTHEW HYLAND and DERRICK S. CORRADO tried to setup a meeting with Defendant UC 5024 at the hotel where the 'Targeted Integrity Test' was being held.

141.    Plaintiff alleges that the meeting with Defendant UC 5024 did not occur.

142.    Plaintiff alleges on or about December 29, 2009, he was 'Modified' for the 'Good of the Department' and assigned to a non-enforcement post in the Fleet Services Division that significantly impacting his growth opportunities while still employed with NYPD.

143.    Plaintiff alleges that at this point, the internal investigators' had 'NO OBJECTIVE CREDIBLE EVIDENCE' that he has committed any crimes or engaging in any serious conduct.

144.    Plaintiff alleges that at this point, the internal investigators' only uncovered conjecture, racial stereotyping and subjective racially charged innuendos.

145.    Plaintiff alleges that between on or about July 16, 2009 through January 25, 2010, internal investigators' under the supervision of Defendants' CHARLES V. CAMPISI; MATTHEW HYLAND; DERRICK S. CORRADO; RICK MILLER and SEAN DONOVAN made numerous covert personal observations of him.

146.    Plaintiff alleges that the internal investigators' used 'UC'S from the Kings County

District Attorney's Office.

147.    Plaintiff alleges that the internal investigators' used a 'CI' aka 'Pretty Tony.'

148.    Plaintiff alleges that the internal investigators', the UC'S from the Kings County District Attorney's Office and 'Pretty Tony' had a great time role playing and acting out the 'Pimp Game' including consuming alcohol, buying marijuana and touching the naked bodies of nude dancers for their own 'sexual gratification.'

149.    Plaintiff alleges that the internal investigators' interviewed numerous 'nude dancers' of color, primarily African-American females that they callously and stereotypically called 'Prostitutes' although they uncovered 'NO OBJECTIVE CREDIBLE EVIDENCE' that these women were engaging in activities as a 'Prostitute.'

150.    Plaintiff alleges that the internal investigators' interviewed numerous women of color, primarily African-American females that they callously and stereotypically called 'Prostitutes' although they uncovered 'NO OBJECTIVE CREDIBLE EVIDENCE' that these women were engaging in activities as a 'Prostitute.'

151.    Plaintiff alleges that at no time, did any internal investigator observe him solicit anyone for sexual favors in exchange for monies.

152.    Plaintiff alleges that at no time, did any internal investigator observe him hire anyone as a sex worker to perform sexual favors for others in exchange for monies.

153.    Plaintiff alleges that at no time, did any internal investigator observe him provide protection services for any sex worker as a 'PIMP' while she performs sexual favors for others in exchange for monies.

154.    Plaintiff alleges that at no time, did any internal investigator observe him demand any portion of proceeds sex workers may have received performing sexual favors for others in

exchange for monies.

155.    Plaintiff alleges that at no time, did any internal investigator observe him failing to take appropriate police action because a crime was being committed in his presence.

156.    Plaintiff alleges that at no time, did any internal investigator observe him engaging in any police misconduct.

157.    Plaintiff alleges that on or about January 25, 2010, a search warrant was executed at Rockwell's Bar and Grill in Brooklyn.

158.    Plaintiff alleges that he was not arrested during the 'Takedown.'

159.    Plaintiff alleges that between on or about January 25, 2010 through May 7, 2010, internal investigators' under the supervision of Defendants' CHARLES V. CAMPISI; MATTHEW HYLAND; DERRICK S. CORRADO; RICK MILLER and SEAN DONOVAN made numerous covert personal observations of him.

160.    Plaintiff alleges that at no time, did any internal investigator observe him solicit anyone for sexual favors in exchange for monies.

161.    Plaintiff alleges that at no time, did any internal investigator observe him hire anyone as a sex worker to perform sexual favors for others in exchange for monies.

162.    Plaintiff alleges that at no time, did any internal investigator observe him provide protection services for any sex worker as a 'PIMP' while she performs sexual favors for others in exchange for monies.

163.    Plaintiff alleges that at no time, did any internal investigator observe him demand any portion of proceeds sex workers may have received performing sexual favors for others in exchange for monies.

164.    Plaintiff alleges that at no time, did any internal investigator observe him failing

to take appropriate police action because a crime was being committed in his presence.

165.    Plaintiff alleges that at no time, did any internal investigator observe him engaging in any police misconduct.

166.    Plaintiff alleges that on or about May 7, 2010, internal investigators' from Group No.: 41 attended a proffer session at the Kings County District Attorney's Office Rackets Bureau.

167.    Plaintiff alleges that the proffer session involved the questioning of a target about his alleged PIMP activities.

168.    Plaintiff alleges that during the proffer session, the target told the internal investigators' that "Batman is usually with Robin who sold beer tickets inside of the club."

169.    Plaintiff alleges that the target does not allege that he is a PIMP.

170.    Plaintiff alleges that on or about May 7, 2010, internal investigators' from Group No.: 41 attended a proffer session at the Kings County District Attorney's Office Rackets Bureau.

171.    Plaintiff alleges that the proffer session involved the questioning of another target about his alleged PIMP activities.

172.    Plaintiff alleges that during the proffer session, the target told the internal investigators' that "He saw Monty 'act like a PIMP' to protect girls, but does not believe that he is an actual PIMP."

173.    Plaintiff alleges that the target does not allege that he is a PIMP.

174.    Plaintiff alleges that between on or May 7, 2010 through June 24, 2010, internal investigators' under the supervision of Defendants' CHARLES V. CAMPISI; MATTHEW HYLAND; DERRICK S. CORRADO; RICK MILLER and SEAN DONOVAN made numerous

covert personal observations of him.

175.    Plaintiff alleges that at no time, did any internal investigator observe him solicit anyone for sexual favors in exchange for monies.

176.    Plaintiff alleges that at no time, did any internal investigator observe him hire anyone as a sex worker to perform sexual favors for others in exchange for monies.

177.    Plaintiff alleges that at no time, did any internal investigator observe him provide protection services for any sex worker as a 'PIMP' while she performs sexual favors for others in exchange for monies.

178.    Plaintiff alleges that at no time, did any internal investigator observe him demand any portion of proceeds sex workers may have received performing sexual favors for others in exchange for monies.

179.    Plaintiff alleges that at no time, did any internal investigator observe him failing to take appropriate police action because a crime was being committed in his presence.

180.    Plaintiff alleges that at no time, did any internal investigator observe him engaging in any police misconduct.

181.    Plaintiff alleges that on or about June 24, 2010, internal investigators' from Group No.: 41 attended a second proffer session at the Kings County District Attorney's Office Rackets Bureau.

182.    Plaintiff alleges that the second proffer session is a follow up to the May 7, 2010, proffer session.

183.    Plaintiff alleges that the target does not allege that he is a PIMP.

184.    Plaintiff alleges that between on or about July 16, 2009 through January 13, 2012, internal investigators' under the supervision of Defendants' CHARLES V. CAMPISI;

MATTHEW HYLAND; DERRICK S. CORRADO; and SEAN DONOVAN the first internal investigation remained open despite being unable to uncover any credible objective evidence that he is a PIMP or engaging in related activities.

185.    Plaintiff alleges that on or about January 12, 2011, he was served with ten (10) Charges and Specifications, all arising from the same incident, the complainant was Defendant MICHAEL C. RICCIARDI under the supervision of Defendant CHARLES V. CAMPISI.

186.    Plaintiff alleges that such Charges and Specifications were essentially administrative oversights and/or errors normally not subject to formal disciplinary action.

187.    Plaintiff alleges that Defendant MICHAEL C. RICCIARDI under the supervision of Defendant CHARLES V. CAMPISI filed such Charges and Specifications in this manner because he knew that the Department did not have any 'OBJECTIVE CREDIBLE EVIDENCE' that he is a PIMP or engaging in related activities.

188.    Plaintiff alleges that he was overcharged to ensure that the Department would be able to argue that he is no longer suitable for police employment.

189.    Plaintiff alleges that such heavy-handed disciplinary tactics were used in the Latino Officers Association City of New York, Inc. v. The City of New York, Et al., SDNY 99 cv 9568 (LAK).

190.    Plaintiff alleges that on or about April 12, 2011, he was served with six (6) Charges and Specifications the complainant was Defendant DERRICK S. CORRADO under the supervision of Defendant MATTHEW HYLAND.

191.    Plaintiff alleges that such Charges and Specifications are essentially tailored to meet their biased investigation which is filled with conjecture, racial stereotyping and subjective racially charged innuendos.

192. Plaintiff alleges that Defendant DERRICK S. CORRADO filed such Charges and Specifications in this manner because he knew that the Department did not have any 'OBJECTIVE CREDIBLE EVIDENCE' to support that he was a PIMP or engaging in related activities.

193. Plaintiff alleges that he was overcharged to ensure that the Department would be able to argue that he is no longer suitable for police employment.

194. Plaintiff alleges that such heavy-handed disciplinary tactics were used in the Latino Officers Association City of New York, Inc. v. The City of New York, Et al., SDNY 99 cv 9568 (LAK).

195. Plaintiff alleges that on or before January 13, 2012, under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI unknown member(s) of Defendant CITY through its' Internal Affairs Bureau or other command within the NYPD illegally, with malice intentionally leaked confidential internal documents from two (2) criminal and/or internal misconduct investigations alleging that he was a PIMP COP.

196. Plaintiff alleges under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI this illegal leak, improperly disclosed confidential investigative information that was re-published through the public domain on the front page, as well as internal pages of the New York Daily News and other media outlets.

197. Plaintiff alleges that under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI the final analysis and conclusions of these two (2) criminal and/or internal misconduct investigations are the result of the continuous pattern and practice of racial animus towards primarily African-American Male employees implemented by personnel assigned to the Internal Affairs Bureau, Department Advocate's Office, First Deputy Commissioner, Trial

Commissioner and the Police Commissioner's Office.

198.    Plaintiff alleges that an objective view of both investigative files would lead one to conclude that he is not a PIMP, nor has he engaged in any criminal conduct or for that matter has not engaged in any serious misconduct.

199.    Plaintiff alleges that such illegal leaks were designed to intentionally damage his reputation as a Dominican Male police officer in the law enforcement community as well as the community at large.

200.    Plaintiff alleges that such illegal leaks were designed to feed harmful racial stereotypes that persist in the NYPD as well as the community at large that "All Black males are criminals."

201.    Plaintiff alleges that based upon this leaked information, he has been vilified in the print and television media, blogs and the like throughout the world.

202.    Plaintiff alleges that on or before January 14, 2012, under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI unknown member(s) of Defendant CITY through its' Internal Affairs Bureau or other command within the NYPD illegally, with malice intentionally leaked confidential internal documents from two (2) criminal and/or internal misconduct investigations alleging that he was a PIMP COP.

203.    Plaintiff alleges under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI this illegal leak, improperly disclosed confidential investigative information that was re-published through the public domain on the front page, as well as internal pages of the New York Daily News and other media outlets.

204.    Plaintiff alleges that under Defendants' RAYMOND W. KELLY and CHARLES V. CAMPISI the final analysis and conclusions of these two (2) criminal and/or internal

misconduct investigations are the result of the continuous pattern and practice of racial animus towards primarily African-American Male employees implemented by personnel assigned to the Internal Affairs Bureau, Department Advocate's Office, First Deputy Commissioner, Trial Commissioner and the Police Commissioner's Office.

205.    Plaintiff alleges that an objective view of both investigative files would lead one to conclude that he is not a PIMP, nor has he engaged in any criminal conduct or for that matter has not engaged in any serious misconduct.

206.    Plaintiff alleges that such illegal leaks were designed to intentionally damage his reputation as a Dominican Male officer in the law enforcement community as well as the community at large.

207.    Plaintiff alleges that such illegal leaks were designed to feed harmful racial stereotypes that persist in the NYPD as well as the community at large that "All Black males are criminals."

208.    Plaintiff alleges that based upon this leaked information, he has been vilified in the print and television media, blogs and the like throughout the world.

209.    Plaintiff alleges that on or about January 27, 2012, he gave unfettered access to the New York Daily News, they had an opportunity to review both internal investigations.

210.    Plaintiff alleges that such unfettered access was given in an attempt to counteract the intentional leaks to the media and to report racial discrimination and police misconduct by the internal investigators.'

211.    Plaintiff alleges that the internal investigators' use 'entrapment' and other questionable aggressive policing strategies as in this case, to unfairly discipline he and other similarly situated primarily African-American Male employees'.

212.    Plaintiff alleges that the internal investigators' utilize such tactics under the supervision of Defendant CHARLES V. CAMPISI.

213.    Plaintiff alleges that Defendant RAYMOND W. KELLY is aware of these questionable aggressive policing strategies and approves of their usage.

214.    Plaintiff alleges that on or about February 15, 2012, he filed a Notice of Claim with the New York City Comptroller's Office, Claim No.: 2012PI004271.

215.    Plaintiff alleges that the aforementioned claims were not resolved during the adjustment period.

216.    Plaintiff alleges that the Department Trial commenced on or about February 15, 2012 and concluded on or about April 30, 2012.

217.    Plaintiff alleges that throughout the Department Trial Defendants' UC 5024; LARRY FLUNORY and WILBERT CRAWLEY under the supervision of Defendants' CHARLES V. CAMPISI; MATTHEW HYLAND; DERRICK S. CORRADO; RICK MILLER and SEAN DONOVAN offered subjective incredible evidence of their biased investigation which is filled with conjecture, racial stereotyping and subjective racially charged innuendos.

218.    Plaintiff alleges that from December 29, 2009 through December 3, 2012, he was forced to work with Caucasian Male officers in the Fleet Services Division that were arrested and in some cases convicted of committing serious crimes involving threats to the public safety such robberies, sexual assaults, conspiracy to distribute drugs, federal racketeering and the like.

219.    Plaintiff alleges that on or about March 22, 2010, he filed a complaint with the Office of Equal Employment Opportunity about being subjected to a 'Hangman's Noose,' Swastikas' and other racially offensive materials at the Fleet Services Division.

220.    Plaintiff alleges that from December 29, 2009 through December 3, 2012, while

assigned to this non-enforcement post, the police management was well aware of this racist conduct as such displays were open and notorious throughout the Department facility.

221.    Plaintiff alleges that there are Caucasian Male Officers who were convicted of similar or more severe crimes that remain employed with the NYPD.

222.    Plaintiff alleges that there are Caucasian Male Officers who were accused of similar or more severe crimes that remain employed with the NYPD.

223.    Plaintiff alleges that there are Caucasian Male Officers who were convicted of similar or more severe misconduct that remain employed with the NYPD.

224.    Plaintiff alleges that there are Caucasian Male Officers who were accused of similar or more severe misconduct that remain employed with the NYPD.

225.    Plaintiff alleges that on or about December 3, 2012, Defendant RAYMOND W. KELLY accepted the 'legally flawed' recommendations of the Trial Commissioner and terminated his employment.

226.    Plaintiff alleges that throughout both internal investigations Defendant CHARLES V. CAMPISI had weekly briefings with Defendant RAYMOND W. KELLY apprising him of each development.

227.    Plaintiff alleges that Defendant RAYMOND W. KELLY did nothing to protect his civil rights or his civil service rights.

228.    Plaintiff alleges that he was unfairly disciplined and terminated due to his race.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

229.    Plaintiff re-alleges Paragraphs 1 through 228 and incorporates them by reference as

Paragraphs 1 through 228 of Count I of this Complaint.

230.    Plaintiff alleges that by the aforesaid discriminatory acts and omissions of
Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C.
RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY;
WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acting individually
and in their official capacities as public officials of Defendant CITY interfered with his right to
enforce contracts under the color of state law because of his race.

231.    Plaintiff alleges that the purpose of Defendants' CITY; RAYMOND W. KELLY;
CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S.
CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN
DONOVAN; and UC 5024 in so acting was to prevent him, through economic and psychological
intimidation, from seeking the equal protection of the laws.

232.    Plaintiff alleges that pursuant to their conduct Defendants' CITY; RAYMOND
W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND;
DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER;
SEAN DONOVAN; and UC 5024 acted to deprive him of his civil rights, by repeated and
insidious acts of harassment, intimidation, bad faith and threats.

233.    Plaintiff alleges that as a result of the aforesaid acts, depriving him of his civil
rights, he suffered mental anguish, emotional distress, and loss of employment opportunities.

### COUNT II
### RETALIATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

234.    Plaintiff re-alleges Paragraphs 1 through 233 and incorporates them by reference as
Paragraphs 1 through 233 of Count II of this Complaint.

235.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 engaged in various retaliatory actions against him acting individually and in their official capacities as public officials of Defendant CITY as a result of his opposition to race discrimination.

236.    Plaintiff alleges that the purpose of Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 in so acting was to prevent him, through economic and psychological intimidation, from seeking the equal protection of the laws.

237.    Plaintiff alleges that pursuant to their conduct Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acted to deprive him of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threats.

238.    Plaintiff alleges that as a result of the aforesaid acts, depriving him of his civil rights, he suffered mental anguish, emotional distress, and loss of employment opportunities.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

239.    Plaintiff re-alleges Paragraphs 1 through 238 and incorporates them by reference as Paragraphs 1 through 238 of Count III of this Complaint.

240.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V.

CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 engaged in various severe and hostile actions against him acting individually and in their official capacities as public officials of Defendant CITY as a result of his opposition to race discrimination.

241.    Plaintiff alleges that the purpose of Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 in so acting was to prevent him, through economic and psychological intimidation, from seeking the equal protection of the laws.

242.    Plaintiff alleges that pursuant to their conduct Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acted to deprive him of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threats.

243.    Plaintiff alleges that as a result of the aforesaid acts, depriving him of his civil rights, he suffered mental anguish, emotional distress, and loss of employment opportunities.

**COUNT IV**
**RETALIATION**
**IN VIOLATION OF**
**THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

244.    Plaintiff re-alleges Paragraphs 1 through 243 and incorporates them by reference as Paragraphs 1 through 243 of Count IV of this Complaint.

245.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;

LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC
5024 retaliated against him.

246.    Plaintiff alleges that he engaged in constitutionally protected speech.

247.    Plaintiff alleges that he suffered adverse employment actions.

248.    Plaintiff alleges that the protected speech was a "motivating factor" in the adverse
employment decision.

249.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V.
CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;
LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC
5024'S actions caused him mental anguish, emotional distress and loss of employment
opportunities.

**COUNT V**
**INTERFERE WITH RIGHT OF ACCESS TO THE COURTS**
**IN VIOLATION OF**
**THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

250.    Plaintiff re-alleges Paragraphs 1 through 249 and incorporates them by reference
as Paragraphs 1 through 249 of Count V of this Complaint.

251.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V.
CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;
LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC
5024 interfered with his right of access to the courts.

252.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V.
CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;
LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC
5024 engaged in various tactics internally within the NYPD designed to interfere with his right

of access to the courts.

253.    Plaintiff alleges that as a result of Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S tactics, his ability to bring forth credible evidence to support his claims has been impacted through intimidation of potential witnesses.

254.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S actions caused him mental anguish, emotional distress and loss of employment opportunities.

## COUNT VI
## MONELL CLAIM
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

255.    Plaintiff re-alleges Paragraphs 1 through 254 and incorporates them by reference as Paragraphs 1 through 254 of Count VI of this Complaint.

256.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 caused his injuries.

257.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S actions were taken under color of law.

258.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 deprived him of his constitutional and statutory rights.

259.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S actions are causally related to his injuries.

260.    Plaintiff alleges that as a result of Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S actions he is damaged.

261.    Plaintiff alleges that an official policy of the NYPD caused his constitutional and statutory injuries.

### COUNT VII
### IMPROPER HIRING
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

262.    Plaintiff re-alleges Paragraphs 1 through 261 and incorporates them by reference as Paragraphs 1 through 261 of Count VII of this Complaint.

263.    Plaintiff alleges that Defendant CITY deprived him of his constitutional and statutory rights by hiring Defendants' CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024.

264.    Plaintiff alleges that Defendant CITY'S decision to hire Defendants' CHARLES

V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;

LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC

5024 reflects a deliberate indifference to the risk that a violation of a constitutional or statutory

right would follow.

265.   Plaintiff alleges that as a result of Defendant CITY'S decision to hire Defendants'

CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S.

CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN

DONOVAN; and UC 5024 he sustained constitutional and statutory injuries.

**COUNT VIII**
**FAILURE TO TRAIN**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

266.   Plaintiff re-alleges Paragraphs 1 through 265 and incorporates them by reference

as Paragraphs 1 through 265 of Count VIII of this Complaint.

267.   Plaintiff alleges that Defendant CITY knows to a moral certainty that its'

employees will confront a given situation.

268.   Plaintiff alleges that the situation either presents the employee with a difficult

choice of the sort that training will make less difficult or that there is a history of employees

mishandling the situation.

269.   Plaintiff alleges that mishandling those situations will frequently cause the

deprivation of a citizen's constitutional rights.

270.   Plaintiff alleges that as a result of Defendant CITY"S failure to train its'

employees he sustained constitutional and statutory injuries.

## COUNT IX
## FAILURE TO SUPERVISE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

271.    Plaintiff re-alleges Paragraphs 1 through 270 and incorporates them by reference as Paragraphs 1 through 270 of Count IX of this Complaint.

272.    Plaintiff alleges that Defendant CITY knows to a moral certainty that its' employees will confront a given situation.

273.    Plaintiff alleges that the situation either presents the employee with a difficult choice of the sort that supervision will make less difficult or that there is a history of employees mishandling the situation.

274.    Plaintiff alleges that mishandling those situations will frequently cause the deprivation of a citizen's constitutional rights.

275.    Plaintiff alleges that as a result of Defendant CITY'S failure to supervise its' employees he sustained constitutional and statutory injuries.

## COUNT X
## RACE DISCRIMINATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

276.    Plaintiff re-alleges Paragraphs 1 through 275 and incorporates them by reference as Paragraphs 1 through 275 of Count X of this Complaint.

277.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, personally interfered with and deprived him of his constitutional rights.

278.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V.

CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;

LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC

5024 acting individually and in their official capacities as a public officials of Defendant CITY

under color of law, and having been fully advised that he was being deprived of his

constitutional rights, either acted in a concerted, malicious intentional pattern to further

discriminate against him, or knowing such discrimination was taking place, knowingly omitted

to act to protect him from continuing deprivations of his rights.

279.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V.

CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;

LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC

5024 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with

gross disregard of his rights.

280.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V.

CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO;

LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC

5024 acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and

cover-up, directed at him and continuing from in or around July 16, 2009 until he was

terminated.

281.    Plaintiff alleges that as a result of the acts of Defendants' RAYMOND W.

KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND;

DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER;

SEAN DONOVAN; and UC 5024 under color of law, he suffered emotional distress, monetary

damage, and incurred medical and legal expenses, and out of pocket expenses for telephone,

postage, and other costs of pursuing the claims herein.

**COUNT XI**
**RETALIATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

282.    Plaintiff re-alleges Paragraphs 1 through 281 and incorporates them by reference as Paragraphs 1 through 281 of Count XI of this Complaint.

283.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, personally interfered with and deprived him of his constitutional rights.

284.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

285.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

286.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V.

CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him and continuing from in or around July 16, 2009 until he was terminated.

287.   Plaintiff alleges that as a result of the acts of Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XII
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

288.   Plaintiff re-alleges Paragraphs 1 through 287 and incorporates them by reference as Paragraphs 1 through 287 of Count XII of this Complaint.

289.   Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, personally interfered with and deprived him of his constitutional rights.

290.   Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acting individually and in their official capacities as a public officials of Defendant CITY

under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

291.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

292.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him and continuing from in or around July 16, 2009 until he was terminated.

293.    Plaintiff alleges that as a result of the acts of Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT XIII**
**ABUSE OF AUTHORITY**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

294.    Plaintiff re-alleges Paragraphs 1 through 293 and incorporates them by reference as Paragraphs 1 through 293 of Count XIII of this Complaint.

295.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, personally interfered with and deprived him of his constitutional rights.

296.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

297.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

298.    Plaintiff alleges that Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and

cover-up, directed at him and continuing from in or around July 16, 2009 until his termination.

299.    Plaintiff alleges that as a result of the acts of Defendants' RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XIV
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

300.    Plaintiff re-alleges Paragraphs 1 through 299 and incorporates them by reference as Paragraphs 1 through 299 of Count XIV of this Complaint.

301.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 discriminated against him because of his race.

302.    Plaintiff alleges that he is within the protected class.

303.    Plaintiff alleges that he is qualified for the position.

304.    Plaintiff alleges that he was subjected to an adverse employment action.

305.    Plaintiff alleges that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

306.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC

5024'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

## COUNT XV
## RETALIATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

307.    Plaintiff re-alleges Paragraphs 1 through 306 and incorporates them by reference as Paragraphs 1 through 306 of Count XV of this Complaint.

308.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 engaged in various retaliatory actions against him because of his opposition to their race discrimination and voicing his complaints to the Internal Affairs Bureau, the Office of Equal Employment Opportunity, and the public through the New York Daily News.

309.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

## COUNT XVI
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

310.    Plaintiff re-alleges Paragraphs 1 through 309 and incorporates them by reference as Paragraphs 1 through 309 of Count XVI of this Complaint.

311.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V.

CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 subjected him to a hostile work environment because of his race.

312.    Plaintiff alleges that the workplace is permeated with discriminatory intimidation, ridicule, and insults that are sufficiently severe or pervasive to alter the conditions of his employment creating an abusive working environment.

313.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 engaged in various hostile actions against him because of his opposition to their race discrimination and voicing his complaints to the Internal Affairs Bureau, the Office of Equal Employment Opportunity, and the public through the New York Daily News.

## COUNT XVII
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-107

314.    Plaintiff re-alleges Paragraphs 1 through 313 and incorporates them by reference as Paragraphs 1 through 31 of Count XVII of this Complaint.

315.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 discriminated against him because of his race.

316.    Plaintiff alleges that he is within the protected class.

317.    Plaintiff alleges that he is qualified for the position.

318.    Plaintiff alleges that he was subjected to an adverse employment action.

319.    Plaintiff alleges that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

320.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S violations caused his mental anguish, emotional distress, and loss of employment opportunities.

## COUNT XVIII
## RETALIATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-107

321.    Plaintiff re-alleges Paragraphs 1 through 320 and incorporates them by reference as Paragraphs 1 through 320 of Count XVIII of this Complaint.

322.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 engaged in various retaliatory actions against him because of his opposition to their race discrimination and voicing his complaints to the Internal Affairs Bureau, the Office of Equal Employment Opportunity, and the public through the New York Daily News.

323.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

## COUNT XIX
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-107

324.    Plaintiff re-alleges Paragraphs 1 through 323 and incorporates them by reference as Paragraphs 1 through 323 of Count XIX of this Complaint.

325.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 subjected him to a hostile work environment because of his race.

326.    Plaintiff alleges that the workplace is permeated with discriminatory intimidation, ridicule, and insults that were sufficiently severe or pervasive to alter the conditions of his employment creating an abusive working environment.

327.    Plaintiff alleges that Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C. RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY; WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 engaged in various hostile actions against him because of his opposition to their race discrimination and voicing his complaints to the Internal Affairs Bureau, the Office of Equal Employment Opportunity, and the public through the New York Daily News.

### JURY TRIAL

328.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands compensatory and punitive damages from

Defendants' CITY; RAYMOND W. KELLY; CHARLES V. CAMPISI; MICHAEL C.

RICCIARDI; MATTHEW HYLAND; DERRICK S. CORRADO; LARRY FLUNORY;

WILBERT CRAWLEY; RICK MILLER; SEAN DONOVAN; and UC 5024 in the amount of

$30 million dollars, plus any and all available statutory remedies, both legal and equitable, and

interests and costs.

Dated: April 30, 2013
        New York, NY

Respectfully submitted,

By: _____
        Eric Sanders

Eric Sanders, Esq.
**THE SANDERS FIRM, P.C.**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
(800) 371-4835 (Business Telephone)
(212) 537-9081 (Facsimile)

Website: http://www.thesandersfirmpc.com